IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS A. SATURDAY, | ) | CASE NO. 1:12-CV-2251 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MEMORANDUM |
| SECURITY, | ) | OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Nicholas Saturday's applications for Supplemental Security Income benefits under Title XVI of the Social Security Act and for Disabled Adult Child benefits[1] under Title II of the Social Security Act is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court VACATES the Commissioner's decision and REMANDS the case back to the Social Security Administration.

**I. PROCEDURAL HISTORY**

On October 12, 2007, Plaintiff Nicholas Saturday ("Plaintiff" or "Saturday") filed applications for Supplemental Security Income benefits and Disabled Adult Child benefits.[2] (Tr. 15, 64-69). In both applications, Saturday alleged he became disabled on May 12, 1995, due to

---

[1] Disabled Adult Child benefits are available to an adult who is deemed disabled before age 22. *See* 42 U.S.C. § 402(d)(1)(G); 20 C.F.R. § 404.350(a)(5).

[2] Plaintiff testified that, at one time, he received Children's Supplemental Security Income benefits, but benefits were terminated when his family's income rose above the eligibility limit. (Tr. 33-34, 85).

1

attention deficit hyperactivity disorder, bipolar disorder, oppositional defiant disorder, and obsessive compulsive disorder. (Tr. 64, 68, 89). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 46-56). Saturday then filed a request for a hearing before an administrative law judge ("ALJ"). (Tr. 59). On August 28, 2009, Administrative Law Judge Michael Cummings convened a hearing. (Tr. 28-41). Plaintiff, who was represented by counsel, appeared and testified. (*Id*).

On September 24, 2009, the ALJ issued his decision after applying the five-step sequential analysis[3] to determine whether Plaintiff was disabled. (Tr. 15-27). Based on his review, the ALJ held that Saturday had not been under a disability since his alleged onset date. (*Id*.). Following the issuance of this ruling, Plaintiff sought review of the ALJ's decision from the Appeals Council. (Tr. 10-11). However, the council denied Plaintiff's request, thereby making the ALJ's ruling the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks

---

[3] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II.  PERSONAL BACKGROUND INFORMATION

Saturday was born on May 12, 1989, and was 20 years old on the date of his hearing before the ALJ. (Tr. 38, 42).  Accordingly, Plaintiff was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).  Starting in third grade, Plaintiff received special education services as a student "with a severe behavior handicap." (Tr. 182).  Saturday finished eleventh grade with mostly "B" and "C" grades. (Tr. 159, 180).  During twelfth grade, he was absent a substantial number of school days, failing all of his classes, and it does not appear that he completed high school. (Tr. 148).  On one occasion, Plaintiff attempted to work as a press operator, but he testified that he was fired after only three weeks on the job due to physical aggression. (Tr. 26, 32).  As a result, Saturday has no past relevant work experience. *Id.*

## III.  SUMMARY OF THE ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law:

1. Born on May 12, 1989, the claimant had not attained age 22 as of May 12, 1995, the alleged onset date.

2. The claimant has not engaged in substantial gainful activity since May 12, 1995, the alleged onset date.

3. The claimant has the following severe impairments: attention deficit hyperactivity disorder (ADHD), bipolar disorder, and oppositional defiant disorder (ODD).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: the claimant can perform simple,

    routine repetitive tasks (SRRT), and the claimant can perform work activities that require no more than occasional, superficial interaction with the public.

6. The claimant has no past relevant work.

7. The claimant was born on May 12, 1989, and was 6 years old, which is defined as a younger individual age 18-44, on May 12, 1995, the alleged disability onset date.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability as defined in the Social Security Act, from May 12, 1995, through the date of this decision.

(Tr. 17-27) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

4

"Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. See *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. See *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See *Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. See *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

In opposition to the ALJ's disability determination, Saturday makes two arguments: (1) that the ALJ's residual functional capacity ("RFC") assessment failed to take into account Saturday's limitations in concentration, persistence, and pace; and (2) that the ALJ erred in relying solely on the Medical Vocational Guidelines to support the conclusion that work existed in significant numbers that Saturday is able to perform. For the foregoing reasons, remand is necessary.

### A. The ALJ's Residual Functional Capacity Finding

Plaintiff maintains that the ALJ failed to properly account for his mental limitations. Specifically, Saturday takes issue with the lack of speed/pace- and production-based restrictions

5

in the RFC finding, given the medical opinion evidence in the record supporting these limitations.

Before moving to the fourth step in the sequential evaluation process, the ALJ must assess the claimant's RFC.  The claimant's RFC represents the claimant's remaining capacity to engage in work-related physical and mental activities despite the functional limitations stemming from his medically determinable impairments.  20 C.F.R. §§ 404.1545, 416.945.

The Social Security Regulations and relevant case law describe the ALJ's duties in evaluating medical opinion evidence when formulating the RFC.   It is well-established that the ALJ must give special attention to the findings of the claimant's treating sources in accordance with the "treating source rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2).  When a treating source's opinion is not entitled to controlling weight, the ALJ must determine how much weight to assign to the opinion by applying factors set forth in the governing regulations.  20 C.F.R. §§ 416.927(c)(1)-(6), 404.1527(c)(1)-(6).  The Regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions. *See Wilson*, 378 F.3d at 544 (*quoting* S.S.R. 96-2p, 1996 WL 374188, at *5).  In addition to the treating source, the Regulations describe state agency medical and psychological consultants as "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527, 416.927.  An ALJ is not bound by any findings made by state agency medical or psychological consultants. *Id.*  However, when the ALJ does not give a treating source's opinion controlling weight, the ALJ ought to explain the weight given to the opinions of state agency medical consultants. *Id.*

Here, the ALJ noted the opinions of Plaintiff's state agency psychological reviewing consultants who concluded that Plaintiff could perform simple and some multi-step tasks in a non-public setting without demands for fast pace, high production or frequent changes in assigned tasks. (Tr. 25). The ALJ afforded those opinions "moderate weight." *Id.* The ALJ indicated that he was not fully accommodating the opinions, but instead limiting Saturday to simple, routine, repetitive tasks and work activities that require no more than occasional, superficial interaction with the public. *Id.* The ALJ did not fully credit the state agency consultants' opinions "because the medical evidence of record indicated that the claimant's symptoms and mood were more stable when he actually took the proper medications." *Id.* In support of this contention, the ALJ cited to Exhibit 1F, which is comprised of medical records from Saturday's inpatient treatment at Belmont Pines Hospital. (Tr. 322-49).

Plaintiff also notes that his treating psychiatrist, Krishna Devulapalli, M.D., similarly opined that he has extreme limitations in his abilities to perform activities within a schedule, as well as marked limitations in his ability to maintain concentration and attention for extended periods. (Tr. 369-70). The ALJ did not attribute controlling weight to Dr. Devulapalli, but instead assigned "minimal weight." (Tr. 25). Among other reasons for not deferring to Plaintiff's treating psychologist, the ALJ again identified an improvement when Plaintiff was properly medicated. *Id.* Saturday argues that the ALJ's RFC determination failed to adequately account for the limitations assessed by the above mentioned medical sources, because the ALJ did not include a limitation addressing pace and production demands in the workplace.

Medical opinions seem to unanimously support the conclusion that Plaintiff may be unable to meet quotas or work at a consistent pace, even when performing simple, routine, repetitive tasks. State agency consultant Leslie Rudy, Ph.D., opined in January 2008 that

7

Plaintiff could perform simple tasks only without fast pace or high production requirements. (Tr. 353). In April 2008, Marianne Collins, Ph.D., offered the same conclusions. (Tr. 368). Plaintiff's treating psychiatrist opined to similar limitations. (Tr. 369-70).

Although the ALJ explained why he discounted these medical sources, the record does not sufficiently support the ALJ's rationale.[4] The ALJ pointed to Plaintiff's treatment notes from a brief period of hospitalization to bolster the conclusion that Plaintiff's symptoms and mood were more stable when he was properly medicated, apparently obviating the need to adopt stricter limitations identified by Plaintiff's medical sources. The records from Belmont Pines Hospital show that Plaintiff was admitted from September 19, 2006 to September 24, 2006 after increased violent outbursts and an attempt to physically injure his stepfather and mother. (Tr. 322, 325). According to William Prince, M.D., Plaintiff's medications were ineffective in helping to control his mood. (Tr. 322-23). Dr. Prince prescribed a new course of medication and healthcare providers monitored its effectiveness. After the change in medication, Saturday reported feeling better and was observed to be "more stable;" he displayed no agitation or aggression. (Tr. 338-39). Saturday's Global Assessment of Functioning ("GAF")[5] score upon

---

[4] Plaintiff's brief does not challenge the ALJ's compliance with the treating source rule, but merely indicates that his treating physician opined to certain production-based and attention-related limitations. Because remand is necessary due to the ALJ's failure to incorporate more specific limitations—which two state agency doctors, in addition to Plaintiff's treating source, identified—the undersigned will not address the mandates of the treating source rule.

[5] "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning. At the low end, GAF 1-10 indicates '[p]ersistent danger of severely hurting self or others (e.g., recurrent violence) or persistent inability to maintain minimal personal hygiene or serious suicidal act with clear expectation of death.' At the high end, GAF 91-100 indicates '[s]uperior functioning in a wide range of activities.' " *Kornecky v. Com'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006) (internal citations omitted). GAF 11-20 indicates some danger of hurting oneself or others (such as frequently violent or manic excitement). GAF 31-40 indicates major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (like avoids friends, neglects family, and is unable to work; a child who is defiant at home and is failing at school). GAF 61-70

admission was 15 and upon discharge was 35. (Tr. 330). Saturday's highest GAF in the past year was 65. *Id.* The ALJ correctly observed that Saturday showed some improvement after a change in medication. However, the medical records from this five day period do not establish a sustainable change in Plaintiff's symptoms if he was compliant with the proper medication, which the ALJ assumed. Moreover, these treatment records do not speak to Plaintiff's ability to maintain attention or concentration in order to meet pace or quota requirements. Accordingly, the ALJ's rejection of pace and production pressures is not supported by substantial evidence.

Contrary to the Commissioner's argument, restricting a claimant to simple routine repetitive tasks—as the ALJ did here—does not always adequately account for a claimant's inability to perform jobs with strict time or production pressures. Plaintiff cites to *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010), to support the contention that the ALJ's RFC does not sufficiently address speed- and pace-based restrictions. The medical evidence in *Ealy* showed that the claimant was limited in the ability to maintain attention over time, even while performing simple, repetitive tasks. *Ealy, 594 F.3d at 516*. Specifically, a state agency consultant limited the claimant's ability to sustain attention to complete simple repetitive tasks to "[two-hour] segments over an eight-hour day where speed was not critical." *Id.* Despite this opinion, the ALJ limited the claimant only to simple, repetitive tasks without any additional time-based limitations. *Id.* As a result, the Sixth Circuit found that the ALJ failed to adequately address the claimant's limitations in concentration, persistence, and pace. *Id.*

*Ealy* certainly stands for the well-known proposition that an ALJ's hypothetical to a vocational expert must adequately describe a claimant's limitations in order to serve as

---

represents some mild symptoms or some difficulty in social, occupational, or school functioning, but the individual is generally functioning pretty well.

substantial evidence in support of the disability finding. *Id.* at 517. Nonetheless, *Ealy* "does not require further limitations in addition to limiting a claimant to 'simple, repetitive tasks' for every individual found to have moderate difficulties in concentration, persistence, or pace." *Jackson v. Comm'r of Soc. Sec.*, No. 1:10-CV-763, 2011 WL 4943966, at *4 (N.D. Ohio Oct.18, 2011). Instead, "Ealy stands for a limited, fact-based ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions." *Id.* at *4.

In the present case, the record supports Saturday's contention that the ALJ failed to include speed- and production-based restrictions into the RFC determination.  Saturday has pointed to evidence in the record supporting these restrictions, thus evidencing the need for more specific limitations than those encompassed by the ALJ's simple, routine, repetitive tasks.  The ALJ's reason for rejecting these opinions is not supported by substantial evidence, thus requiring a second evaluation.  On remand, if the ALJ concludes that Saturday does not require additional speed- and pace-based restrictions, he should explain what other evidence in the record he relied upon to reject the opinions that found such a limitation.

### B. The ALJ's Reliance on the Medical-Vocational Guidelines

Plaintiff challenges the ALJ's application of the Medical-Vocational Guidelines at step five of the sequential evaluation process due to Plaintiff's diagnoses of multiple nonexertional impairments.

Once an ALJ has determined that a claimant does not have the RFC to perform his past relevant work, the burden shifts to the Commissioner to show that the claimant possesses the capacity to perform other substantial gainful activity existing in significant numbers in the national economy.  *See Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987).  To meet this burden, the Commissioner can rely on either the Medical-Vocational

Guidelines ("the grids") or the testimony of a vocational expert ("VE") as to the availability of jobs. *See Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). However, the grids only directly apply to exertional limitations, and generally, an ALJ's reliance on the grids is inappropriate where the claimant, like Saturday, suffers from only nonexertional limitations. *Id.* If an ALJ chooses to use the grids in light of a claimant's nonexertional impairments, the ALJ must find that the impairments do not significantly reduce the occupational base of work at the designated exertional level. *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (*quoting Cole*, 820 F.2d at 771). A nonexertional limitation will preclude the use of the grids where it is "severe enough to restrict a full range of gainful employment at the designated level." *Id.* (*citing Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 985 (6th Cir. 1987)). The ALJ must support his finding that the nonexertional impairment does not significantly erode the occupational base with "reliable evidence of some kind." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

 Here, the ALJ found that Plaintiff was limited to simple, routine, repetitive tasks, and work activities that require no more than occasional, superficial interaction with the public. The ALJ concluded that these limitations did not significantly erode the base of unskilled work at the given exertional level, which in this case was all exertional levels due to Plaintiff's lack of physical limitations.

 As discussed previously, the ALJ's failure to properly address particular speed or pace limitations was in error and necessitates remand. Given that the ALJ's disposition of this issue may affect whether Saturday's nonexertional limitations had a significant effect on the occupation base of jobs, and potentially requiring VE testimony, the Court need not reach the issue of the ALJ's reliance on the grids. Upon reevaluation of Saturday's claim, if the ALJ

11

assigns pace or production restrictions, the ALJ ought to determine whether these restrictions affect the job base such that additional support, beyond the grids, is required to support the conclusion at step five.

While the Court will not make a finding as to the ALJ's reliance on the grids, undersigned notes that Plaintiff's brief raises some further questions about the ALJ's step five finding. In relying on Social Security Ruling 85-15, the ALJ stated:

> The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. A finding of 'not disabled' is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines and the provisions of SR 85-15.

(Tr. 26). Following this explanation, the ALJ did not provide evidence to support this conclusion. Despite this failure, the Sixth Circuit has found that in some cases, the ALJ may be entitled to rely on the grids when the claimant's RFC is supported by substantial evidence and the RFC tracks the language used in Social Security Ruling 85-15 to describe the mental demands of unskilled work. *See Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 671 (6th Cir. 2009). Thus, to determine whether the ALJ's reliance on the grids was appropriate when a claimant's RFC is not disputed, the issue becomes whether "the skills required for unskilled work are congruent with [the claimant's] nonexertional limitations." *Boley v. Astrue*, 11-CV-10896, 2012 WL 680393 at *12 (E.D. Mich. Feb. 10, 2012).

To clarify, Social Security Ruling 85-15 addresses the application of the grids as a framework for claimants with solely nonexertional mental impairments. SSR 85-15, 1985 WL 56857 at *4. It provides that "[w]here there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work." The ruling defines that the basic mental demands of unskilled work

12

as the ability—on a sustained basis—to: (1) understand, carry out, and remember simple instructions; (2) to respond appropriately to supervision, coworkers, and usual work situations; and (3) to deal with changes in a routine work setting. *Id.*

A claimant's limited ability to respond appropriately to supervision and coworkers, as required to perform unskilled work, may preclude the use of the grids to support an ALJ's step five finding. Example 1 of the ruling states that "[a] person whose vocational factors of age, education, and work experience would ordinarily be considered favorable would have a severely limited occupational base if he or she has a mental impairment which causes a substantial loss of ability to respond appropriately to supervision, coworkers, and usual work situations." *Id.* Furthermore, courts have held that a limitation regarding a claimant's ability to interact with co-workers and supervisors conflicts with the basic requirements of unskilled work and significantly erodes the occupational base, precluding the use of the grids. *See, e.g.*, *Anthony v. Comm'r of Soc. Sec.*, 1:11-CV-1400, 2012 WL 4483790, at \*27 (N.D. Ohio Sept. 27, 2012); *Boley v. Astrue*, 11-CV-10896, 2012 WL 680393, at \*12 (E.D. Mich. Feb. 10, 2012).

Here, the ALJ did not include any limitations relating to supervisor or coworker interaction in the RFC, and only limited Plaintiff to occasional, superficial interaction with the public. Plaintiff does not directly challenge the ALJ's omission of supervisor and coworker limitations, but the undersigned notes that Plaintiff's brief suggests such an issue. Saturday maintains that he suffered from "*social* and skill level-related limitations" stemming from his mental impairments, which may have affected his work capacity in such a way that the use of the grids was inappropriate. (Pl. Brief at 10) (emphasis added). In addition, the evidence, as set forth in Plaintiff's brief, documents Plaintiff's on-going struggle to appropriately interact with others, including teachers and parents. As the ALJ explained in his opinion, two state agency reviewers

opined that Saturday "required a setting without close over-the-shoulder supervision and without demands for cooperative interactions with coworkers." (Tr. 25). However, the ALJ rejected these limitations, ostensibly because Plaintiff's symptoms and mood were more stable when he took the proper medication, which the undersigned deemed insufficient to reject pace- and production-based limitations for the reasons set forth herein. Accordingly, the ALJ may wish to consider the Plaintiff's ability to interact with co-workers and supervisors and whether further development of the record, including VE testimony, is required to determine if there are a significant number of jobs that Plaintiff can perform.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly, the final decision of the Commissioner is REVERSED and REMANDED for further proceedings.

IT IS SO ORDERED.

                                                  s/ Kenneth S. McHargh
                                                  Kenneth S. McHargh
                                                  United States Magistrate Judge

Date: December 27, 2013.